# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ABSENTEE SHAWNEE HOUSING, ET AL., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>HOUSING AND URBAN )<br>DEVELOPMENT, )<br>)<br>Defendant. ) | NO. CIV-08-1298-HE |

## ORDER

Plaintiffs, The Absentee Shawnee Housing Authority ("ASHA") and the Housing Authority of the Seminole Nation of Oklahoma ("HASNOK"), filed this action under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), against the United States Department of Housing and Urban Development ("HUD"), claiming the agency wrongfully withheld and recaptured grant funds paid to plaintiffs pursuant to the Native American Housing and Self-Determination Act of 1996, 25 U.S.C. §§ 4101-4243 ("NAHASDA" or "Act"). Plaintiffs challenge a regulation HUD promulgated in 1998 as part of the funding allocation formula the agency used to distribute housing funds from 1998 through 2008.[1]

### Statutory and Regulatory History

"Congress enacted NAHASDA in an attempt to consolidate low-income housing assistance for Indian tribes and simplify the distribution of funds." Fort Peck Hous. Auth. v. United States Dep't of Hous. and Urban Dev., 367 Fed.Appx. 884, 885 (10th Cir. 2010),

---

[1]References to the Administrative Record will be to R. Vol._, Tab _.

*cert. denied*, ___ U.S. ___ (2010) (unpublished opinion).  Its goal was to provide federal assistance "in a manner that recognizes the right of Indian self-determination and tribal self-governance by making such assistance available directly to the Indian tribes or tribally designated entities . . . ."  25 U.S.C. § 4101(7).  Under NAHASDA, federally-recognized Indian Tribes are eligible to receive block grant funding ("IHBG")[2] for affordable housing programs.  25 U.S.C. § 4111(a).  Tribes can administer the IHBG directly or through a tribally-designated housing entity ("TDHE").  *Id.* at §§ 4103(18), 4111(a). The Absentee Shawnee Housing Authority (ASHA") and the Housing Authority of the Seminole Nation of Oklahoma ("HASNOK"), state agency housing authorities, *see generally* 63 Okla. State. § 1057, serve as the TDHE's for the Absentee Shawnee Tribe of Oklahoma and the Seminole Nation of Oklahoma.

In NAHASDA, Congress directed HUD to "establish a formula to provide for allocating amounts available for a fiscal year for block grants under [the] Act among Indian tribes . . . ."  25 U.S.C. § 4152(a).  The formula was to "be based on factors that reflect the need of the Indian tribes and the Indian areas of the tribes for assistance for affordable housing activities," *id*. at § 4152(b), including "[t]he number of low-income housing dwelling units owned or operated at the time pursuant to a contract between an Indian housing authority for the tribe and the Secretary." *Id.*  The Act provided that a negotiated rulemaking committee comprised of "representatives of the Federal Government and of

---

[2]*Indian Housing Block Grant.*

geographically diverse small, medium, and large Indian tribes," 25 U.S.C. § 4116(b) develop proposed implementing regulations.

The block-grant formula, which the committee helped craft, was included in the final regulations.  24 C.F.R. §§ 1000.301-1000.340; Fort Peck, 367 Fed.Appx. at 886.  The formula consisted of two separately calculated components: "Formula Current Assisted Housing Stock" units ("FCAS" or "current units") and "Need."  24 C.F.R. § 1000.310; Fort Peck, 367 Fed.Appx. at 886.  Current units included all dwelling units owned or operated by an entity as of September 30, 1997, and limited other units.  24 C.F.R. §§ 1000.312, 1000.314; Fort Peck, 367 Fed.Appx. at 886 n.6.  Other regulations, including § 1000.318, identified when current units "became ineligible for purposes of the block grant formula." Fort Peck, 367 Fed.Appx. at 886 n.6.

To determine the amount of funding a Tribal Housing Entity would receive in a particular fiscal year, HUD applied the formula by first calculating the number of current units Tribal Housing Entity owned or operated and then earmarking funds from the total appropriation to fund them.  *Id*. at 887.  The agency then established the current need portion for each Tribal Housing Entity "by applying preset weighted criteria to the remaining amount of appropriated funds."  *Id*.  "Because the funds earmarked for the current unit portion of the formula directly reduced the amount of funding available for current need disbursement, the current units component was of primary importance to Tribal Housing Entities."  *Id.*

"The current units calculation for an individual Tribal Housing Entity began with the number of dwelling units owned or operated by that entity at the time of NAHASDA's

enactment." *Id.* In subsequent years that number decreased as some rent-to-own units were eligible to be transferred from the tribal housing entity's inventory or otherwise disposed of pursuant to a contract, such as a lease-to-own agreement, between the tribal housing entity and the unit's occupant. *Id.* HUD reflected this reduction by a downward adjustment in the current units calculation, which was "equal to the number of dwelling units a tribe 'no longer has the legal right to own, operate, or maintain ... whether such right is lost by conveyance, demolition, or otherwise.'" *Id.* (quoting 24 C.F.R. § 1000.318(a)). The regulations required units to be removed from a Tribal Housing Entity's inventory "as soon as practicable after the unit becomes eligible for conveyance." 24 C.F.R. § 1000.318(a)(1). HUD relied on information provided annually by the individual tribal housing entities on "Formula Response Form[s]" to determine the number of disqualified units. 24 C.F.R. § 1000.312; Fort Peck, 367 Fed.Appx. at 887.

## Background

As the result of a nation-wide audit conducted by HUD's Office of Inspector General in 2002, HUD discovered that numerous housing entities, including plaintiffs, had owned or operated fewer dwelling units than they had reported on their Formula Response Forms and were receiving or had received funds for dwelling units they no longer owned or operated. *Id.* HUD demanded a refund of the overpayments and proposed a means of repayment. The ASHA partially repaid HUD and then filed this lawsuit with HASNOK.

Plaintiffs claim that HUD, by relying on 24 C.F.R. § 1000.318(a), breached its trust responsibility to plaintiffs and improperly eliminated certain housing units from the

calculation of their current units through the end of fiscal year 2008. Even if the regulation was valid, plaintiffs assert that HUD erred in its enforcement in certain instances by depriving them of funding for units that they continued to own or operate, having delayed or forgone conveyance "legitimately and in the exercise of its self-determination." Plaintiffs' brief, p. 12. Plaintiffs also contend they were not afforded due process prior to the reductions and recapture. Finally, plaintiffs assert that, even if they were overfunded by HUD for any of the fiscal years in question, HUD lacks the authority to set-off future IHBG in the amount of the overfunding, the statute then in effect prohibited the recapture of IHBG funds once they were expended on low-income housing activities and any remedial actions by HUD were subject to a three year limitations period.[3]

## Analysis

Validity of 24 C.F.R. § 1000.318(a)[4]

Exercising jurisdiction under the Administrative Procedures Act, the court must determine whether HUD's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "Statutory interpretation

---

[3]*Plaintiffs waived their limitations argument, which they mentioned in their summary of argument and never discussed again.*

[4]*The court has considered the validity of the regulation but notes, as defendant briefly argues, that plaintiffs' facial challenge to the regulation appears to be time-barred because the action was filed more than ten years after the regulation was adopted. See 28 U.S.C. § 2401(a). Plaintiffs argue in their reply brief that the 2008 amendment to NAHASDA waived the six year statute of limitations. While the waiver may apply, at least as to as-applied challenges to 24 C.F.R. § 1000.31, the court's review has been made difficult by the lack of specificity in both the amended complaint and plaintiffs' brief as to the particular agency decisions plaintiffs are contesting.*

begins with the words Congress has chosen." Fort Peck, 367 Fed.Appx. at 889. The court enforces the statute's plain meaning. *Id.* If the language is clear the inquiry ends. If, however, an ambiguity exists or "irrational results arise from the statute's literal wording, [the court] appl[ies] additional interpretive tools to ascertain and give effect to Congress's intent." *Id.*

The pertinent statutory provisions at issue are 25 U.S.C. § 4152(b)(1), prior to its amendment in 2008,[5] and 24 C.F.R. § 1000.318(a).

25 U.S.C. § 4152(b)(1) provided that:

> (b) Factors for determination of need
> The formula shall be based on factors that reflect the need of the Indian tribes and the Indian areas of the tribes for assistance for affordable housing activities, including the following factors:
> (1) The number of low-income housing dwelling units owned or operated at the time pursuant to a contract between an Indian housing authority for the tribe and the Secretary.

24 C.F.R. § 1000.318(a), provided that:

> (a) Mutual Help and Turnkey III units shall no longer be considered Formula Current Assisted Stock when the Indian tribe, TDHE, or IHA no longer has the legal right to own, operate, or maintain the unit, whether such right is lost by conveyance, demolition, or otherwise, provided that:
> (1) Conveyance of each Mutual Help or Turnkey III unit occurs as soon as practicable after a unit becomes eligible for conveyance by the terms of the MHOA; and
> (2) The Indian tribe, TDHE, or IHA actively enforce strict compliance by the homebuyer with the terms and conditions of the MHOA, including the requirements for full and timely payment.

Plaintiffs interpret § 4152(b)(1) to require the inclusion of "any and all units owned

---

[5] *The regulation challenged by plaintiffs, 24 C.F.R. § 1000.318(a) has not been amended.*

or managed by the TDHE in the FCAS[6] for formula funding purposes." Plaintiffs' brief, p. 5. They argue that, while the statute plainly created the presumption that those units represented the minimum allocation for the current units portion of the formula, HUD concluded, based on 24 C.F.R. § 1000.318(a), that units that had been conveyed to participants or were conveyance eligible, more than 25 years old and intended for eventual homeownership rather than rental, should be excluded from current units. Plaintiffs contend that Congress's passage of the 2008 Reauthorization Act requires the court to find that HUD, by depriving plaintiffs of IHBG funding and attempting to recapture funding, acted arbitrarily, capriciously and in excess of its lawful authority.

Congress amended NAHASDA ("Reauthorization Act") in 2008 and revised the factors used to determine the tribe's need for assistance for affordable housing activities. The amendment essentially adopted 24 C.F.R. § 1000.318(a), providing that units became ineligible for inclusion in FCAS when the tribes no longer own, or should no longer own, the units. 25 U.S.C. § 4152(b)(1)(A)(ii) (units "lost to the recipient by conveyance, demolition, or other means" are excluded from FCAS). The Reauthorization Act specifically provided that the changes in the factors used to determine the formula would "not apply to any claim arising from a formula current assisted stock calculation or count involving an Indian block grant allocation for any fiscal year thorough fiscal year 2008, if a civil action relating to the claim is filed by not later than 45 days after the date" of the amendment's enactment. *Id.* at

---

[6]*Formula Current Assisted Housing Stock.*

§ 4125(b)(1)(E).[7]

The Tenth Circuit considered the validity of 24 C.F.R. § 1000.318 in Fort Peck, 365 Fed.Appx. at 884. It concluded that "the plain language of the statute did not set a funding floor based upon the 1997 units," and that HUD's regulation, which "clearly included the entire (b)(1) factor as the starting point," complied with the mandate set forth in NAHASDA that the funding "formula relate to the need of the Housing Entities." *Id*. at 891-92.  As the court explained:

> HUD determined the funding of units no longer owned or operated by a Tribal Housing Entity decreased the amount of remaining funds available to fund the current need of all tribal programs. Thus, it incorporated a corresponding reduction in the current units portion of the formula funding and effectively increased the amount of funding available for the current need portion of the formula. Interpreting § 4152(b)(1) to prohibit a reduction in the number of current units corresponding to a measurable reduction in responsibility by the Tribal Housing Entity for those units is inconsistent with the statute's plain language and is contrary to Congress's unambiguous intent that the funding formula relate to the needs of all tribal Housing Entities.

*Id.* at 891. While, as plaintiffs note, Fort Peck. is not binding, the court finds it be persuasive. The court is not swayed by plaintiffs' argument that the Tenth Circuit erred in failing to consider the impact of the 2008 Reauthorization Act. See United States v. Cooper, 396 F.3d 308, 314 n.7 (3d Cir. 2005) ("However, even if Congress' intent were somehow ambiguous, we are reluctant to divine Congress' intent from a statute's subsequent history

---

[7]*In 2007, a new regulation was codified that provided for HUD's recovery and reallocation of overpayments that resulted from an Indian tribe's inclusion of ineligible units in its FCAS count. 24 C.F.R. § 1000.319.*

because it is an untrustworthy barometer."); *see generally* Brown v. Thompson, 374 F.3d 253, 259 n.2 (4th Cir. 2004) ("[C]ourts regularly view a conflict in the courts with regard to the proper interpretation of a statute-as existed with MSP here-as an indication that Congress passed a subsequent amendment to clarify rather than change existing law.").[8] It also finds it inappropriate, in light of the unambiguous statute, to infer Congressional intent from the retroactivity exception in § 4152(b)(1)(E).

Following Fort Peck, the court concludes that 24 C.F.R. 1000.318(a) was a valid implementing regulation.

Remaining arguments

Defendant asserts that plaintiffs have waived the bulk of their remaining contentions by failing to adequately brief them. The court agrees.

In Part IV(C) of their brief, plaintiffs assert that HUD "also deprived TDHEs of funding for units that a TDHE continued to own or operate for numerous lawful and good faith reasons, even after completion of the 15 or 25-term of participation in the pertinent homeownership program." Plaintiffs' brief, p. 12. They state that "[a]t the counting phase of these actions, [they] "will demonstrate. that HUD refused to consider situations where a TDHE could, legitimately and in the exercise of its self-determination, delay or even forgo conveyance." *Id.* Plaintiffs then fail to develop this argument. They do not cite any case or

---

[8]*Plaintiffs urge the court to apply the Indian canon of construction. Resort to the canon is unnecessary because "NAHASDA was unambiguous and the final regulations were properly promulgated within NAHASDA's mandate." Fort Peck, 367 Fed. Appx. at 892. As the Tenth Circuit aptly put it: "[T]he canon cited does not allow a court to robe Peter to pay Paul no matter how well intentioned Paul may be." Id.*

9

statutory authority, refer to the administrative record, or even identify the specific decisions they are contesting. As the court cannot address the issue without additional discussion or information, it concludes plaintiffs waived the issue.

In Part IV(D) of their brief, plaintiffs assert HUD failed to provide them with notice and an opportunity for a hearing to contest any determination that funds had been overpaid, in violation of "Sections 401 and 401 of NAHASDA (25 U.S.C. § 4161), 24 C.F.R. §1000.532, the APA and the due process clause of the United States Constitution, Amendment 5." Plaintiffs' brief, p. 12.[9] They claim HUD notified ASHA by letter of its intent to recapture over $200,000 in IHBG funds and invited it to discuss repayment options, but did not advise it of its right to appeal the determination. The defendant disputes plaintiffs' characterization of the record and their challenge to its procedure for recovering overpayments. Regardless, plaintiffs once again fail to provide the court with any argument to support their claim. The skeletal reference to a statute, regulation or constitutional amendment does not present a cognizable issue for the court's review. Plaintiffs waived their procedural claim.

In Part IV(E) of their brief, plaintiffs contend that HUD lacked the authority to

---

[9]*In their reply brief plaintiffs assert that "[t]he informal appeal and reconsideration procedure cited by HUD is not equivalent to the adjudicatory hearing on the record guaranteed by statute" and cite 24 C.F.R. § 26. Plaintiffs' reply, p. 3. That regulation provides that the procedural rules set forth "apply to administrative sanction hearings pursuant to 2 CFR part 2424 and to hearings with respect to determinations by the Multifamily Participation Review Committee pursuant to 24 CFR part 200, subpart H ... [and] "also apply in any other case where a hearing is required by statute or regulation." 24 C.F.R. § 26.1. As plaintiffs have not shown that a statute or regulation mandates a hearing when HUD seeks to recover overpayments, 24 C.F.R. § 26, by its own terms, does not apply.*

recapture funds already spent on affordable housing activities, citing 24 C.F.R. § 1000.532(a). That regulation provides that:

> HUD may ... make appropriate adjustments in the amount of the annual grants under NAHASDA in accordance with the findings of HUD pursuant to reviews and audits under section 405 of NAHASDA. HUD may adjust, reduce, or withdraw grant amounts, or take other action as appropriate in accordance with the reviews and audits, except that grant amounts already expended on affordable housing activities may not be recaptured or deducted from future assistance provided on behalf of an Indian tribe.

Plaintiffs argue that "HUD never attempted to determine whether the Plaintiffs already had expended funds for the fiscal years in question," and that "[i]f indeed some or all of these funds have been spend on affordable housing activities, then [§ 1000.532(a)] would prohibit HUD from recapturing these amounts, even if HUD correctly determined that Plaintiffs had over-counted their respective FCAS." Plaintiffs' brief, p. 14.[10]

The "ifs" in the sentence preclude the court's consideration of plaintiffs' argument. Plaintiffs complain about HUD's asserted failure to determine whether they had already expended their allocated funds for affordable housing activities, yet they have not bothered to find out if that did, in fact, happen. They also failed to demonstrate that § 1000.532(a) applies here, in the absence of "findings of HUD pursuant to reviews and audits under section 405 of NAHASDA." *Id.* This argument also is waived.

Finally, plaintiffs are not entitled to relief on the ground that HUD breached the trust

---

[10]*Plaintiffs make a similar assertion in their reply brief: "[I]t is likely that Plaintiffs expended the IHBG fund at issue in this case prior to the commencement of the enforcement actions by HUD." Plaintiffs' reply, p. 4.*

duty owed them.  The court finds it unnecessary to determine whether, as defendant urges, NAHASDA did not create a trust relationship, due to the absence of any evidence of a breach of trust.

Having rejected plaintiffs' argument that HUD acted arbitrarily and capriciously in promulgating and implementing 24 C.F.R. § 1000.318(a), and their other claims, plaintiffs request for relief is **DENIED**.

**IT IS SO ORDERED**.

Dated this 8th day of August, 2012.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE